Good morning ladies and gentlemen. The court's first case of the day is 117142 People of the State of Illinois v. John Willie Jolly. You ready to proceed? May it please the court. I'm Martin Ryan from the Office of the State Appellate Defender. I represent Mr. Jolly as a matter. Essentially this case involves the Krenkel process which is a process that was a policy that was crafted by this court to protect the right to counsel and to limit an effectiveness claims on direct appeal by making a record. Essentially when it goes to full fruition there's two stages. In the first stage you have a neutral court inquiry of the defendant and counsel as to the pro se claims to determine whether counsel should be appointed. If counsel is appointed it proceeds to an evidentiary hearing where the accused has new counsel, right to cross examination, but there's adversarial state participation in that proceeding. The hearing that occurred in this case had a mishmash of both type, both stage two and Mr. Jolly got the worst of both worlds. He was essentially required to go pro se without a right to cross-examination against a fully participating state adversary at what was supposed to have been a preliminary stage one Krenkel inquiry. The only zealous advocate in that courtroom was the prosecutor. Essentially Mr. Jolly was deprived of the very right to counsel that Krenkel was designed to protect. Also and separately the judge here considered unknown information about his personal interactions with Mr. Welch or professional interactions I should say with Mr. Welch in other cases. In discussing Mr. in discussing its decision the court said and I quote and being familiar with Mr. Welch not only with respect to that particular case but other cases in which during that time that both of us were in the criminal felony division would have had numerous encounters with one another feel I have a sufficient basis and knowledge to go ahead and draw upon that understanding that perception and that knowledge with respect to the competence of counsel unquote. It's undisputed by the both the appellate court and state here that the state's full adversarial participation was error and as was the judge use of his experience with Mr. Welch in unrelated cases. The error in requiring Mr. Jolly to go pro se and without a right to cross-examination is not fixable with harmless error review. It is unknown what information had there been a proper evidentiary hearing what information a zealous advocate would have uncovered with questions designed to elicit from Mr. Welch perhaps damaging material. It is also unknown what information the judge considered about Mr. Welch. I mean how can you review for harmless error something that we don't even know about the judge's experience with Mr. Welch and irrelevant and Yes in a number of regards but yes in that regard. Okay can you distinguish this then? Yes yes of course your honor in NITS the basic platform was a proper preliminary critical inquiry was held. It was recalled NITS had complained that counsel was ineffective for failure to call four witnesses. The court found that there were colorable claims as to two of four and properly decided to hold an evidentiary hearing. The court erred in requiring basically conflicted counsel to question these two witnesses. However that got to an evidentiary hearing and Mr. NITS had conflicted counsel which I submit is better than no counsel at all. Further in that particular case which questioning these two witnesses in addition to conflicted counsel questioning these two witnesses in addition to the prosecutor questioning these two witnesses Mr. NITS was allowed to submit questions. I'm not sure of the mechanism if it went through the court or if it went through his conflicted counsel but the opinion in NITS makes no makes no statement that NITS was dissatisfied that his questions weren't asked. So and it just turned out that the and then this court found it was harmless beyond a reasonable doubt. Here we don't know what the court considered. Here we don't know what a zealous advocate would have said. If we find reversible error here counsel what is the proper remedy? I think in this case your honor if there is to this court find reversible error I think the best the best remedy in this case and but it be appointment of counsel. And the reason I say that as in the Oury case which is admittedly a post-conviction case but I think the logic even if it's no those not legally binding here the logic is persuasive. Well I think that the honest answer to that is yes and no. I think like Moore I mean this is not on inquiry here. I think actually the other error is like Moore in that the is be the the air work where the court is is considering the evidence of his interactions with Welch outside this case. That's that's in like Moore but for a different reason it's impossible to review that for harmless error because you don't the guy did not the judge did not specify that. So I think it's like Moore in that way in that harmless error it's like more in the harmless error review is not appropriate although it's not the same error that happened in Moore. It's the long-winded way of getting to your question. Anyway I think in this case the best remedy again is to appoint counsel because here the judge is already this judge has already made a decision based on this flawed process with excuse me on the flawed process with you know with the adversarial participation but if you keep this judge then you have the judge who is familiar with the trial proceedings. I think a zealous advocate at an evidentiary hearing could at least present new information so the court would not essentially you know if there's no new if it gets sent back to stage one with the same judge it's doomed to the same result because he's already made up his mind. So unless there's either a different judge or new information I believe new counsel will have new information. Also incidentally I don't know if you're honest this is actually the second appeal in this case. The first appeal was where this judge didn't do made the base essentially the Moore error. He made no inquiry at all and so it got remanded by the fourth district for him to make that inquiry and so if we appoint count if this court appoints counsel then it actually goes to the second stage or the evidentiary hearing of Uncrankle and we're done with the preliminary hearing and then it's just whether the decision to grant a new trial or not would be manifestly erroneous. What was the relief granted in Fields? In Fields they grant they changed they remanded it for a new judge and there's a fact that's present in Fields that was not present here. In Fields the judge who ultimately had the sort of bad hearing where they had it was supposed to be a preliminary crankle and the state was the state participated that judge who heard that was not the judge who proceeded at trial and the I believe the second district noted that in a footnote at the end of their opinion and I believe that that is what informed their choice of remedy. However that also would also fix the problem albeit it would risk yet another appeal if there's another error but you'd also have a judge who wasn't who wasn't the one who sat at trial. That's your alternate relief? Yes yes I think in my opinion I think that's better but the the alternate relief would also fix the error but I think really just as a rule of policy which is of course what this court will decide if it gets to the remedy stage I think generally appointing counsel is going to be the better remedy more often than not but if in the case like Fields I think Fields picked the right remedy in the in the event that the judge has gone anyway or if the judge is retired or not on the bench or has been reassigned to a different case. Everyone agrees that this hearing was not proper but the everyone agrees that the appropriate kind of hearing is that when the defendant makes some raises the issue of ineffective assistance of counsel that the court is required to have some kind of colloquy with the defendant to determine whether or not there's been a showing to move forward and appoint counsel basically. So what issues did the defendant raise here in this hearing? Albeit that it went out of control and there was an adversary system but what were the issues that the defendant rose here? Did they rise to the level that had it been a clean hearing but that it should have moved on to the appointment of counsel? Your Honor this way in my opinion yes although I did not raise the the two claims but here's the things I thought those two claims survived this bad process. I think the information is tainted so you can't fairly judge the information that's presented on this record because you had a zealous advocate that tainted the entire pool of information. There were Mr. this was a basically a drug deal with basically an informant who was trying to get himself out of trouble I believe his name was Mr. Gunn and there were some issues with Mr. Gunn's credibility that Mr. Jolly thought that Mr. Welch should have pursued more aggressively. So to answer your so you know I think the problem is it's not the type of air here defeats harmless is because it's just not a trustworthy pool of information because I think a state questioner and we saw it here the state got to present argument the state's goal in questioning Mr. Welch and presenting its evidence was to defeat Mr. Jolly getting new counsel and that's not a clean hearing and Mr. Jolly said judge you know my client my counsel didn't pursue this this witness was a really bad guy and he didn't bring that out he didn't represent me appropriately. Is that sufficient then to move on to appointed counsel? I think if well I see so if you're so you're saying if Mr. Jolly had said those if that were his allegations okay those are so vague in general that I think what happens then is the court has to ask what exactly do you mean and if he never gets if he never gets more specific than I think then you just deny you then then he hasn't presented a colorable claim but yeah you have to the court has to evaluate and sometimes I think of the the my clients are not often the most articulate so the judge as this court stated and more an interchange is going to be necessary with the defendant and very often with counsel. What were the fact just out of curiosity the facts and circumstances relating to Lewis leaving in the courtroom and you said he went without an attorney right? Yes. Okay and and Lewis was his assigned attorney at the time right? Yes that was the other sort of quirk of this case is they already had a lawyer on this case that they could have easily just assigned and gotten it over with. My understanding of it is that Mr. Welch was counsel for the sentencing hearing but then his contract expired with McLean County Public Defender's Office and so Ron Lewis was appointed to do the sentencing reconsideration hearing just because Mr. Welch was no longer employed or his contract was up and nothing to do with any alleged conflict but by that time in between is when Mr. Jolly had filed his filed his base case crankle motions and then Mr. Lewis comes on and says I you know there's these things he at the reconsideration hearing there are these motions here however I'm only here for reconsideration the courts is that right and doesn't and doesn't consider any of them. Then on appeal that gets sent back to reconsider the crankle claims and so they go back and have this to have a hearing in the wake of the remand order and Mr. Lewis who is in the courtroom at the time is told that he can leave and he leaves. So I mean that's the other thing about it is they already had another lawyer they were paying for who could have just been assigned and then you know either he could file if if all the claims were frivolous he could have filed a Greer motion to withdraw or he could have found one thing to argue and presented evidence on it. I think that more I meant more or less touches on most of the points I wanted to I wanted to get to I do believe in terms of this standard of harmless error that comes I I believe that probably the best and of course this is a decision for this court to make the best policy would be something like the Galtney rule where state participation is reversible error if it's either invited by the court or relied upon by the court and I think we have both here. Also something like the Moore rule applies to considering Welch's conduct in other cases because it's not known unless in the rare cases the court actually says on the record exactly what the court is talking about which the court did not do so here the judge did not do so here I don't think that's possible to be fairly reviewed for harmless error. Anyway Mr. Jolly asked this court reverse the decision by the appellate court and the circuit court and appoint counsel if there are no further questions. Thank you counsel. Good morning your honors counsel and may it please the court. Erica Seaborn from the Attorney General's office here on behalf of the people. The appellate court did not err in holding the harmless error analysis applies to procedural errors in a crankle hearing. That holding is consistent with this court's precedent in NITS and Moore and properly distinguishes between structural or reversible error versus a procedural error in a common law proceeding. Now Moore in Moore this court said that the operative concern for a reviewing court is the adequacy of the record and here the record was adequate even without the information that was elicited by the state during its questioning of Mr. Welch. It's clear from the record and you can see that all of this in volume 9 is that the trial court has read Mr. Jolly's pro se motions at length before the hearing and then he engages in a lengthy colloquy with Mr. Jolly. The colloquy runs 19 pages going through each and every claim and giving Mr. Jolly the opportunity to articulate for the court exactly what he thinks Mr. Welch should have done. Now that is proper crankle procedure. In fact that information that was elicited at the colloquy was adequate enough that under crankle and Moore and all of the crankle cases the trial court could have denied the crankle motions at that point and at that point there would have been no procedural error and we probably would not be here. Similarly the trial court's questioning of Mr. Welch when he's asking Mr. Welch questions you can see that beginning at page 37 when he's asking Mr. Welch for information about these particular claims that is also proper crankle procedure and at the end of the hearing the trial court applies the proper crankle standard for denying appointment of counsel when he states the claims lack merit or matters of trial strategy. Now defendants argument seems to depend on the idea that when the state was eliciting information from Mr. Welch that managed to retroactively taint the entire proceeding including the entire colloquy which I think both parties would agree that was proper procedure at the beginning of the hearing. Now he compares this to Galtney but this isn't quite the situation that Galtney was concerned about. Obviously Galtney is about post-conviction and it's statutory so it's not binding but even its persuasive value is limited here. The Galtney court stated that what it's concerned about is situations where the trial court seeks or relies on state participation and the examples that it gives is when the state makes a lengthy argument in favor of its position, cites case law, or the trial court states I'm relying on the state's submissions here in denying the post-conviction proceeding. That's not what happened here. And again if you look at the record, the questions that the state asks of Mr. Welch are all the sorts of questions that the trial court leader asks going through each individual claim. Those questions would not have been improper if the trial court had asked them, they would have been. appropriate questions for an initial Krenkel proceeding. At the end of the proceeding the state doesn't make a lengthy argument in favor of denying proceeding to a second-stage Krenkel inquiry. It makes an argument that lasts for a total of two lines. It simply says there's no ineffective assistance here, we shouldn't have an evidentiary hearing. That's it. There's no citations to case law. And when the trial court is denying this it never states that it's the state makes a vague comment that he knows Mr. Welch from previous proceedings, but again he never states what it is about those previous proceedings that he might be thinking about. He simply says these claims lack merit or are matters of trial strategy. That is the proper standard under Krenkel. Now in arguing that this is not reviewable for harmless error, the defendant is essentially arguing for a new category of reversible or structural error. And this court has stated in its previous reversible error cases that that category is extremely limited. It's only for procedural errors that necessarily render the proceeding unfair or unreliable to the point where we have no confidence in the outcome whatsoever. This court has previously held that violations of the zero principle don't rise to the level of reversible error. The United States Supreme Court has held the same thing about peremptory challenges. Even constitutional questions such as Strickland itself or even a violation of constitutional questions, but that doesn't rise to the level of structural error. And here, as previously explained, the proceeding was not so unreliable that we can have no confidence in the outcome because the initial colloquy and the trial court's questioning were both proper procedure and were adequate to create a record of the kind that we can have confidence in. Now Your Honor asked about the particular claims here. I think if you look at the particular claims, all 11 of them, these claims are not the sort where we lack confidence in the trial court's decision that these claims lack merit or matters of trial strategy. They are, in fact, matters of trial strategy. They go everything from not moving to reduce the bond to not objecting to a state, not objecting to the lack of a state expert witness about United States currency. These aren't the sort of things where we lack confidence. But even if the court did find that one of these claims was without it, this court could conclude that this procedural error is reviewable for harmlessness, but that in this particular case, we cannot say that this error is harmless beyond a reasonable doubt. That would be a way of giving Mr. Jolly another chance, perhaps, to develop the record further without creating a new category of structural error, which could then lead this court to precedent that's inconsistent with its prior precedent. Well, opposing counsel seems to be saying that it's tantamount to a structural error in light of the fact that Mr. Jolly did not have counsel. How do you address that? I would say this does not rise to the level of structural error, because even though he did not have counsel during this common law proceeding, it's not the same as the type of structural error that we talk about when you say denial of counsel during an actual trial. Because again, the question is always, has the error so tainted the proceedings that the entire proceeding is unreliable, that we can have no confidence in the outcome? And the question is, did the lack of counsel here during this portion of the proceeding necessarily taint everything else that happened that we do have confidence in? And it's also the question of what could have been brought forth? Mr. Welch did testify at length about each and every claim. Counsel says, well, perhaps if he had had his own counsel, maybe Mr. Welch would have said something else, but we do not have any idea of what that is. The hypothetical information outweigh the reliable information that we do have on the record. Because again, 19 pages of Mr. Jolly saying exactly what he thinks his counsel should have done, and every single one of those things is a matter of trial strategy or is obviously meritless. For example, one of the claims that he talks about is the confidential informant and whether or not his trial counsel adequately cross-examined him. Well, the jury knew that the confidential informant had some credibility issues. He was a confidential informant who was working off drug charges. He was a drug addict. He admitted all of that on the stand. I believe the state brought out most of the credibility problems on direct. That issue was certainly before the jury. You could say that, well, you know, perhaps counsel should have asked him those questions many more times, but the information is out there. So then, of course, under Strickland, the question would be, would it have made any difference if he had asked Mr. Gunn about his drug problems over and over? Counsel also suggests that this particular Krankel procedure was actually an evidentiary hearing, but it's clear that what was actually happening here was this is a preliminary hearing that went a little, it got a little skewed at the point where the state started participating, but that didn't transform it into a full evidentiary hearing. It was back on remand. The remand stated, have a preliminary inquiry under Krankel and determine whether or not to appoint counsel. The trial court clearly thinks that it's going to have a preliminary hearing. It states that over and gather the information for the appellate court. In fact, before putting Mr. Welch on the stand, the trial court even says, no matter who is doing the questioning of Mr. Welch, he wants to make clear that the purpose of the questioning is just to address the allegations. It's not to, they're not having a full evidentiary hearing at that point, but even if counsel were correct and this were, in fact, a full evidentiary hearing, counsel still has to show why it is that this particular error is more serious than what happened in this. So much more serious, in fact, that the entire proceeding has been tainted to the point where we have no confidence in its reliability. And I would submit that he has not shown any way of distinguishing this that would be consistent with this court's other precedent. I'll briefly address the remedy questions. Before you get there, what about the analogy between post-conviction and the Krankel situation made by counsel? Well, I think he's relying on Galtney there, but even Galtney says that it's, the reversal isn't automatic, even under post-conviction, that you still, it only happens if you find that the trial court sought or relied on state input in making that. But I would also argue that more broadly, post-conviction is a very different procedure from Krankel. Post-conviction has been codified in statute. The stages are laid out. But you look at the record in a little different light, right? You look at the record, harmless error, there would have to be the record shows that the improper input from the state was neither solicited nor relied upon by the trial court. Yes, that's what Galtney says. So you, it has to be there rather than saying, we don't know what's there, right? Or it's not there. Yes, I believe that that is what Galtney says. But I think that more broadly, when we're talking about whether or not we should be applying structural error, there's the question of the source of the right that the defendant says is being violated. You know, Galtney is statutory, but we know that Krankel is common law procedure. Excuse me. Krankel is a common law procedure. It's a creation of this court. And as this court noted in Glassberg, when we're talking about rights that were created by the state or created by the court as opposed to being sourced in the Constitution, those don't rise to the level of structural error. If we agree with counsel's argument, though, you would admit that there's nothing in the record to indicate that there wasn't reliance by the trial judge on the input of the state. The trial judge does state for the record, and he goes through some of the claims individually saying that he doesn't, that he believes they're matters of trial strategy or lack merit. And in some cases, and I would say that in all of the cases, the record itself reveals that the claims themselves lack merit. So even if this court does not want to look at what the trial court said, it can look at the claims for itself and apply harmless error analysis and find that they're harmless beyond a reasonable doubt. In terms of the remedy question, if this court were to find that Mr. Jolly deserves relief here, we agree with defendant to the extent that we would say the appropriate remedy would be to appoint new counsel to have a second-stage crankle evidentiary hearing. However, we would say that given that this court should not create a new category of structural error, in order to remain consistent with the rest of precedent, the court could limit the holding to the facts of this case using its supervisory power. Or again, the court could hold that the error can't, that the error is only reviewable for harmlessness, that this isn't a new category of structural error, but that in this case, looking at the merits of the claims, the errors are not harmless beyond a reasonable doubt, which would again lead to a reband for a second-stage crankle procedure. Counsel? Yes. In Moore, we sent it back for a new hearing. Harmless error was not even discussed. I know you probably think Moore supports you, and maybe it does, maybe it doesn't, but you know, you said earlier that this hearing was skewed. That's why I'm trying to, I want to, you know, outside of what you said in the briefs, just summarize where you think this stands with Moore. Our position is that Moore does support us, because Moore did say we can't review for harmlessness, but if you look at Moore, I think it goes from about page 78 to 81, what Moore is talking about over and over again is we can't review this for harmlessness, because we don't know what happened. That's the real problem. Moore doesn't say we're remanding because we find that this is a structural or reversible error, because this error is so serious. It's the lack of information. That's what Moore is concerned about, and that's why Moore says the operative concern of an appellate court is always the adequacy of the record. That's the purpose of the first-stage crankle inquiry. Give the appellate court enough information that they can review this, and it's clear from both Moore and from all the appellate court cases, is that crankle procedures are supposed to be flexible, but their purpose is to gather information for the appellate court to have an adequate record. Once the record is adequate, then the court can make a harmless error determination and find that any error was harmless beyond a reasonable doubt. But when the court gave the oath, I mean, did administer the oath to Mr. Welch, and court asked questions, and the think at some point the state said, well, we want to respond to each allegation or each assertion, I forget the phrase they used, to what Mr. Jolly was arguing about. So that doesn't make it an evidentiary hearing, since they're going through each of these so-called claims, and they're going under oath? No, the fact that they went through each claim doesn't transform it into an evidentiary hearing. That is proper crankle procedure. That's what a trial court is supposed to do at the first stage, is give the defendant every opportunity to talk about every single claim that he's raised. That's proper under crankle for the first stage. Again, and putting Mr. Welch under oath, if the trial court had limited the questioning to just trial court asking questions, that would also have the proper procedure for the first stage under crankle. So it's not the placing of Mr. Welch under oath that transformed this into an evidentiary hearing. We would argue that this didn't actually become an evidentiary hearing. The trial court thought he was having a preliminary hearing, and his understanding, and this is correct under Moore and Nitz and all the appellate court precedent, is his purpose here is to develop a record and decide whether to appoint counsel, because he correctly understood that it's the appointing of new counsel that transforms this into a second stage crankle hearing. We're not contesting that the state asking these questions of Mr. Welch, that should not have happened. That was in fact error. However, because the record developed both before and after the state's participation, was not tainted by the state's participation, there's enough information here to allow for harmless error analysis, and the errors here were not so serious that they've tainted the entire proceeding. If the court has no other questions, we would ask the court to affirm. Thank you. I believe, as the state put it, in trying to refer to the second half of the proceedings here, this is what a trial court is supposed to do, and I would agree with that. It's what a trial court's supposed to do, not a state's attorney, who always will question as a zealous advocate. Moore, contrary to the possibility, because no record had been made, and I know that the state does not address that same principle applying to the court's reliance on its experience with Mr. Welch and other cases, which there is no pool of information on the record, but we know that that taint is there, and the state doesn't address how Moore is different from that. Moore talks about the adequacy of the inquiry. It doesn't talk about whether there's any information in the record, regardless of however much taint there is on it. Also, the state, in relying on Nitz, doesn't address any of the arguments or factors I've ever made to distinguish the case at the stage of the error, the fact of the underlying claim. Nitz was effectively allowed to question as to what should have been asked, and they made a record as to the two claims, and he had conflicted counsel rather than no counsel at all. As to the state's structural error argument, I would note that neither, that the appellate court did not say anything about structural error, did not base its decision on structural error, and I think the structural error is sort of a red herring here anyway. As this court pointed out in Glasper, whether something is or is not a structural error for federal purposes is not binding on this court determining whether or not there should be a policy of having reversible error and whether harmless error analysis is feasible or not. And at any rate, this clearly was an evidentiary hearing. You have a witness testifying. You have, you know, you have, you have the court almost sort of substituting almost for cross-examination, and then after this evidentiary stage where Mr. Jolly has gotten to say his claims but not allowed to argue them, he was told, say what you, what your claims are, but don't argue them during that first stage, then the state presents its evidence. In fact, the court invited the state and said, do you have any evidence, and then had its disclaimer about this not being an evidentiary hearing that proceeded to have evidence, and then there was an argument phase. And as this court pointed out with respect to motions in People v. Patrick, it's the substance of the motion that controls, not the label. And I would submit that we had, we had, we had an evidentiary phase, we had an argument phase. This was an evidentiary hearing, or at least at the end, by the end. I also take issue with the state's position that at the point that it stopped questioning Jolly, that it could have reversed there. Because, as I pointed out in the reply brief also, there were a number of claims, and this is also was stated in fields of state, which the case would just say doesn't distinguish or address at all. There are a number of Jolly's claims that were, would have been based on facts outside the record, such as the ineffectiveness claims related to speedy trial, being able to review discovery materials, trial preparations, not conferring with Mr. Jolly about the motion to suppress should have been filed. And these are all factors that would or could have potentially depended on facts that were not in front of the court. That there's no way the court could have known without having an inquiry of Mr., of Mr. Welch, in this case. So the court could not have simply just said, I have, I've heard enough, denied at that point. As for Galtney, again, there is a continuum, there's a continuum of possible harmless error rules this court can take. The state essentially views NITS as, even though NITS doesn't say this, as being the broad rule that every error, except the narrow exception in Moore, where there's no inquiry at all, goes for harmlessness beyond a reasonable doubt. But I think the Galtney rule is very, very applicable here. It's a very similar analysis. In both cases, you have a trial judge who's making a low-level merit inquiry, whether it's just or a colorable claim, to whether pro se claims of subspecies, you know, have the gist or are colorable such that we should appoint counsel. It's the same basic inquiry, even when it's not mandated by statute. And I think actually the fact that there's statutory support actually just, you know, makes it even more appropriate to apply the wisdom of both this court and the legislature in Galtney, you know, to the harmless error pool of information here is reliable by just saying it's reliable and doesn't take into account either the taint from the court's unknown information or the fact that the questioning was done by a zealous advocate and Mr. Jolly did not have the chance to cross-examine. Essentially, your honors, I think I have pretty much run out at the end of my remarks. I would say that this case was more than a little skewed. I would say it was a full-on evidentiary hearing, even if it didn't start out that way. And if there are no further questions, thank you, your honors. Thank you. In case number 117142, people of the state of Illinois versus John Willie Jolly will be taken under advisement as agenda number nine. Mr. Ryan, Ms. Seaborn, thank you for your arguments today and you are excused at this time.